# United States Court of Appeals

*for the*

# Third Circuit

Case No. 25-3045

VANDA PHARMACEUTICALS, INC.,

*Plaintiff-Appellant,*

– v. –

MSN PHARMACEUTICALS, INC.; MSN LABORATORIES PRIVATE LTD.; AMNEAL PHARMACEUTICALS, INC.; IMPAX LABORATORIES, LLC,

*Defendants-Appellees.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

## BRIEF FOR DEFENDANTS-APPELLEES

AARON S. LUKAS
WILLIAM BLAKE COBLENTZ
COZEN O'CONNOR
2001 M Street, N.W., Suite 500
Washington, DC 20036
(202) 912-4800

MADISON H. MCNULTY
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-5562

*Attorneys for Defendants-Appellees MSN Pharmaceuticals, Inc., MSN Laboratories Private LTD., Amneal Pharmaceuticals, Inc., and Impax Laboratories, LLC*

COUNSEL PRESS (800) 4-APPEAL • (392110)

## CORPORATE DISCLOSURE

MSN Pharmaceuticals, Inc. is wholly-owned by MSN Laboratories Private Ltd. MSN Laboratories Private Ltd. is a privately held company, and no publicly-held company owns ten percent (10%) of more of the stock of MSN Laboratories Private Ltd.

Amneal Pharmaceuticals, Inc. is a publicly-held company. No publicly-held company owns ten percent (10%) of more of the stock of Amneal Pharmaceuticals, Inc.

Impax Laboratories, LLC is a wholly-owned subsidiary of Amneal Pharmaceuticals LLC, which is a subsidiary of Amneal Pharmaceuticals, Inc., a publicly-held company, and Amneal Intermediate Inc. No publicly-held company owns ten percent (10%) of more of the stock of Amneal Pharmaceuticals, Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

JURISDICTION ........ 3

COUNTERSTATEMENT OF ISSUES ........ 3

RELATED CASES AND PROCEEDINGS ........ 3

COUNTERSTATEMENT OF THE CASE ........ 3

I. RELEVANT LEGAL BACKGROUND ........ 3

II. RELEVANT FACTUAL BACKGROUND ........ 7

III. PROCEDURAL HISTORY AND RULINGS PRESENTED FOR REVIEW ........ 12

SUMMARY OF THE ARGUMENT ........ 14

STANDARD OF REVIEW ........ 17

ARGUMENT ........ 17

I. THE DISTRICT COURT PROPERLY DISMISSED VANDA'S FALSE ADVERTISING CLAIMS. ........ 17

A. Vanda's Lanham Act Claim (I) Is Precluded. ........ 17

1. The FDCA precludes Vanda's Lanham Act false advertising claim where FDA already approved Appellees' Generic Product. ........ 19

2. There is an irreconcilable conflict between Vanda's False Advertising Claim and the FDCA. ........ 28

a) The "Brand Reference" statement on Amneal's website is neither false nor misleading, and is within the scope of FDA's approval of Appellees' Generic Product. ........ 28

b) The half-life data is neither false nor misleading, and was approved by FDA to be included on the label. ........ 32

3. Public policy favors FDCA preclusion when Lanham Act claims question FDA approval of generic drugs. .....36

B. Vanda Failed to Plausibly Plead Any Cause of Action for False Advertising under the Lanham Act. .....37

1. The “Brand Reference” statement and the half-life data are neither literally false nor misleading. .....39

2. Vanda did not allege a tendency to deceive or materiality. .....41

3. Vanda did not plausibly allege a likelihood of injury .....42

II. THE DISTRICT COURT PROPERLY DISMISSED VANDA’S STATE LAW CLAIMS. .....43

CONCLUSION .....43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
823 F.3d 51 (2d Cir. 2016) ....................26, 34, 36, 39

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
No. 11 CIV. 8803 AT, 2014 WL 5462547 (S.D.N.Y. Oct. 23, 2014), *aff'd*, 823 F.3d 51 (2d Cir. 2016) ....................30, 33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................17

*Azurity Pharms., Inc. v. Edge Pharma, LLC,*
45 F.4th 479 (1st Cir. 2022)....................38, 39

*Belcher Pharm., LLC v. Hospira, Inc.*
1 F.4th 1374 (11th Cir. 2021) ....................20, 21, 22, 23

*BTG Int'l Ltd. v. Amneal Pharms. LLC*,
352 F. Supp. 3d 352 (D.N.J. 2018)....................34, 35

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
12 F. Supp. 2d 296 (S.D.N.Y .1998) ....................30, 33

*Eli Lilly & Co. v. Alderwood Surgical Ctr.*,
No. 2:24-878, 2025 WL 745670 (W.D. Wash. 2025) ....................23, 24

*Exela Pharma Scis., LLC v. Sandoz, Inc.*,
486 F. Supp. 3d 1001 (W.D.N.C. 2020)....................27

*G&W Lab'ys, Inc. v. Laser Pharms, LLC*,
No. 3:17-CV-3974-BRM-DEA, 2018 WL 3031943 (D.N.J. June 19, 2018) ....................24, 32, 39

*Gilead Scis., Inc. v. Meritain Health, Inc.*,
No. 1:24-CV-03566-JRR, 2025 WL 1745669 (D. Md. June 24, 2025) ....................25, 26

*Groupe SEB U.S., Inc. v. Euro-Pro Operating LLC*,
774 F.3d 192 (3d Cir. 2014) ....................................................................38

*Hi-Tech Pharms., Inc. v. Hodges Consulting, Inc.*,
230 F. Supp. 3d 1323 (N.D. Ga. 2016)............................................................27

*Impact Apps., Inc. v. Concussion Mgmt, LLC*,
No. 19-3108, 2021 WL 978823 (D. Md. Mar. 16, 2021)..................................26

*JHP Pharm., LLC v. Hospira, Inc.*,
52 F. Supp. 3d 992 (C.D. Cal. 2014) ..............................................................27

*Johnson & Johnson-Merck v. Rhone-Poulenc Rorer*,
19 F.3d 125 (3d Cir. 1994) ..............................................................................38

*Locus Telcomms., Inc. v. Talk Global, LLC*,
No. 14-1205, 2014 WL 4271635 (D.N.J. Aug. 28, 2014).................................42

*McCafferty v. Newsweek Media Grp., Ltd.*,
955 F.3d 352 (3d Cir. 2020) ............................................................................17

*Mylan Pharm., Inc. v. Procter & Gamble Co.,*
443 F.Supp.2d 453 (S.D.N.Y. 2006) ...............................................................33

*Mylan Laboratories, Inc. v. Matkari*,
7 F.3d 1130 (4th Cir. 1993) ......................................................................31, 32, 40

*Newborn Bros. Co., Inc. v. Albion Eng'g Co.*,
481 F. Supp. 3d 312 (D.N.J. 2020)...................................................................38

*Novo Nordisk A/S v. IV Harmony Clinic LLC*,
No. 8:24-cv-2292-MSS-CPT, 2025 WL 1124969 (M.D. Fla. April
16, 2025) ..........................................................................................................24

*Pacira BioSciences, Inc. v. Ventis Pharma., Inc.*,
No. 2:24-cv-07554-MRA-RAO, 2025 WL 576549 (C.D. Cal. Jan.
17, 2025) ..........................................................................................................24

*Pom Wonderful v. Coco-Cola Co.*,
573 U.S. 102 (2014)........................................................................................*passim*

*Reybold Grp. of Companies, Inc. v. Does 1–20*,
323 F.R.D. 205 (D. Del. 2017) ...................................................................15, 38

*Trustid, Inc. v. Next Caller, Inc.*,
No. 18-172, 2022 WL 318299 (D. Del. Jan. 5, 2022) ....41, 42

*Vanda Pharms. Inc. v. Food & Drug Admin.*,
No. 23-CV-2812 (CRC), 2024 WL 4133623 (D.D.C., Sept. 10, 2024) ....11

*Wyeth v. Sun Pharm. Indus., Ltd.*,
No. 09-cv-11726, 2010 WL 746394 (E.D. Mich. Mar. 2, 2010) ....30

*Zogenix, Inc. v. Apotex Inc.*,
No. 21-1252, 2023 WL 5835828 (D. Del. Sept. 8, 2023) ....17

**Statutes**

6 Del. C. § 2532(a)....12

15 U.S.C. § 1051, *et seq*....*passim*

15 U.S.C. § 1125(a)(1)(B) ....38

21 U.S.C. § 301, *et seq.*....*passim*

21 U.S.C. § 321(m) ....31

21 U.S.C. § 355(a) ....4

21 U.S.C. § 355(d) ....21

21 U.S.C. § 355(j) ....4

21 U.S.C. § 355(j)(2)(A)(iv) ....4, 6

N.J. Stat. § 56:8-2....12

**Other Authorities**

21 C.F.R. § 201.57(c)(2)(iv) ....35

21 C.F.R. § 314.2 ....4

21 C.F.R. § 314.3 ....*passim*

21 C.F.R. § 314.94 ....4

21 C.F.R. § 314.94(a) .......... 4, 29, 30, 34

21 C.F.R. § 314.94(a)(3)(i) .......... 8

21 C.F.R. § 314.94(a)(7) .......... 4

21 C.F.R. § 314.94(a)(7)(i) .......... 5

Fed. R. Civ. P. 12(b)(1) .......... 12

Fed. R. Civ. P. 12(b)(6) .......... *passim*

# INTRODUCTION

The District Court properly dismissed Plaintiff-Appellant Vanda Pharmaceuticals Inc.'s ("Vanda") claims in their entirety. Vanda's claims against Defendants-Appellees[1] all concern issues committed to FDA's discretion and are therefore precluded by the Federal Food, Drug, and Cosmetic Act ("the FDCA").

The generic tasimelteon drug product at issue in this case ("Appellees' Generic Product") was approved by the U.S. Food and Drug Administration ("FDA") on January 12, 2023 (A192-A199) and has been marketed and sold in the United States since June 2023. In doing so, FDA determined that Appellees' Generic Product is bioequivalent to Hetlioz® and that Hetlioz® was the reference listed drug (A193). Vanda has previously sought to revoke FDA's approval of Appellees' Generic Product by filing a citizen petition at FDA and by suing FDA in federal district court. Vanda's citizen petition was denied, and Vanda's district court action against FDA was dismissed under Rule 12(b)(6). This case is Vanda's latest attempt to usurp FDA's authority by alleging that statements consistent with FDA's approval of Appellees' Generic Product are false and misleading under the Lanham Act.

Specifically, Vanda's Complaint (A30) and Opening Brief (DE 23) allege that the FDA-approved label for Appellees' Generic Product (A758-A772) and certain

[1]Defendants-Appellees MSN Pharmaceuticals, Inc., MSN Laboratories Private Ltd. (collectively, "MSN"), Amneal Pharmaceuticals, Inc. ("Amneal"), and Impax Laboratories, LLC ("Impax") arereferred to herein collectively as "Appellees".

statements on Amneal's website (A774-A780) are false or improperly suggest that Appellees' Generic Product (i) was tested against Vanda's branded tasimelteon product (Hetlioz®), and (ii) is bioequivalent to Hetlioz®. However, in approving Appellees' Generic Product, FDA already determined that it is both bioequivalent and therapeutically equivalent to Hetlioz®, the reference listed drug. Thus, there is an irreconcilable conflict between the FDA approval process and the purportedly false statements Vanda complains of. Vanda's allegations boil down to an assertion that FDA should not have approved Appellees' Generic Product—a dispute between Vanda and FDA that was fully resolved last year when FDA denied Vanda's citizen petition. *See* A921-A958.

Vanda is asking the courts to revisit FDA's drug-approval determination and the agency's subsequent denial of Vanda's citizen petition—decisions committed to FDA's scientific and regulatory expertise. Permitting Vanda to proceed would require courts to second-guess FDA's scientific judgments and effectively override the agency's conclusions through private litigation. That cannot be allowed. Courts are not a forum for relitigating FDA approval decisions or for repackaging regulatory disagreements as false-advertising claims. Vanda's lawsuit therefore represents an impermissible collateral attack on FDA's determinations. The District Court was correct in dismissing Vanda's action in its entirety, and this Court should uphold that decision.

## JURISDICTION

Appellees agree with Appellant's statement of jurisdiction.

## COUNTERSTATEMENT OF ISSUES

1. Whether the District Court correctly held that Vanda's Lanham Act claim is precluded by the FDCA where adjudicating the claim would require the Court to interpret and enforce FDA regulatory requirements, determine the lawfulness of product labeling and marketing reserved to the FDA's primary jurisdiction, and second-guess determinations already made by FDA when it approved Appellees' Generic Product.

2. Whether, after dismissing Vanda's federal Lanham Act claim at the pleading stage, the District Court properly declined to retain supplemental jurisdiction over the remaining state-law claims.

## RELATED CASES AND PROCEEDINGS

Appellees agree with the statement of related cases and proceedings set forth in Appellant's brief.

## COUNTERSTATEMENT OF THE CASE

### I. RELEVANT LEGAL BACKGROUND

The FDCA, 21 U.S.C. § 301, *et seq.*, is the foundational federal law that grants FDA its legal authority to regulate food, drugs, medical devices, and cosmetics. The FDCA provides the statutory framework, while FDA is the expert agency Congress has charged with enforcing these regulations and evaluating the sameness,

substitutability, and labeling of generic drug products. *See* 21 C.F.R. § 314.2 ("The purpose of this part is to establish an efficient and thorough drug review process in order to: (a) Facilitate the approval of drugs shown to be safe and effective; and (b) ensure the disapproval of drugs not shown to be safe and effective."). Within this specialized domain, FDA has established and applies technical standards and certain nomenclature that control how equivalence between branded products and generic products is determined. *See, e.g.,* A106-A148.

Specifically, the FDCA requires that the manufacturer of a new drug obtain FDA approval before launching such drug. 21 U.S.C. § 355(a). FDA regulates Abbreviated New Drug Applications ("ANDA") under 21 U.S.C. § 355(j) and 21 C.F.R. § 314.94 to approve generic drugs as safe and effective alternatives to brand-name drugs without requiring new clinical trials. Unlike a traditional New Drug Application ("NDA"), an ANDA for a generic drug "relies on FDA's previous finding that the reference listed drug is safe and effective." 21 C.F.R. § 314.94(a). "To rely on this finding, an ANDA applicant must provide sufficient information to show that its drug product is bioequivalent to the RLD." 21 C.F.R. § 314.94(a)(7); *see also* 21 U.S.C. § 355(j)(2)(A)(iv). Certain standard terms are central to this framework, and central to the issues presented on appeal.

First, a "Reference listed drug" (or "RLD") is FDA's formal designation of a specific brand-name product against which generic drug applicants must

demonstrate bioequivalence and to which labeling must conform. *See* 21 C.F.R. § 314.3 (defining reference listed drug as "the listed drug identified by FDA as the drug product upon which an applicant relies in seeking approval of its ANDA."). Notably, the term "reference listed drug" is FDA's official term of art; the terms "brand reference" or "reference brand" are merely colloquial restatements of the same concept and do not denote a distinct regulatory category or a different scientific standard.

Second, "bioequivalence" is FDA's scientific criterion for demonstrating that a generic drug product provides a "rate and extent of absorption" that does "not show a significant difference from the rate and extent of absorption of the [reference] listed drug … ." *See* A106-A148 at A111. Specifically, "bioequivalence" is defined as "the absence of a significant difference in the rate and extent to which the active ingredient or active moiety in pharmaceutical equivalents or pharmaceutical alternatives becomes available at the site of drug action when administered at the same molar dose under similar conditions in an appropriately designed study." 21 C.F.R. § 314.3. FDA requires ANDA applicants to submit "[i]nformation that shows that the drug product is bioequivalent to the reference listed drug upon which the applicant relies," 21 C.F.R. § 314.94(a)(7)(i), and evaluates bioequivalence "in terms of rate and extent of absorption of the active ingredient or moiety, emphasiz[ing] the use of [pharmacokinetic] endpoints … such as $C_{max}$ and AUC that

are reflective of the rate and extent of absorption, respectively." *See* A106-A148 at A112. These determinations are squarely within FDA's technical competence and statutory mandate. *See, e.g.,* 21 U.S.C. § 355(j)(2)(A)(iv). Notably, bioequivalence must be satisfied as a condition of marketing specified drug products. *See* 21 C.F.R. § 314.3. ("*Bioequivalence Requirement* is a requirement imposed by FDA for in vitro and/or in vivo testing of specified drug products that must be satisfied as a condition of marketing.").

Third, "Therapeutic Equivalents" are "approved drug products that are pharmaceutical equivalents for which bioequivalence has been demonstrated, and that can be expected to have the same clinical effect and safety profile when administered to patients under the conditions specified in the labeling." 21 C.F.R. § 314.3. Therapeutic equivalence is based on FDA's scientific evaluation, as reflected in the Orange Book,[2] that a generic drug is both pharmaceutically equivalent to, and bioequivalent with, the branded RLD, and thus is substitutable under the agency's standards. In other words, FDA deems therapeutically equivalent products to be interchangeable, and FDA alone confers therapeutic equivalence ratings. *See id*. An "AB rating" is FDA's therapeutic equivalence code that indicates

[2]FDA's publication *Approved Drug Products With Therapeutic Equivalence Evaluations* is commonly known as the "Orange Book," and identifies drug products approved on the basis of safety and effectiveness by the FDA under the FDCA, available at: https://www.fda.gov/drugs/development-approval-process-drugs/orange-book-preface (last accessed April 21, 2026).

a generic product is therapeutically equivalent to the reference listed drug (i.e., its "brand reference"). An AB rating rests on FDA's assessment of both pharmaceutical equivalence and bioequivalence under the agency's established methodologies.[3]

As noted above, these interlocking determinations—bioequivalence findings, assignment of a reference listed drug, and the conferral of therapeutic equivalence with an AB rating—are matters statutorily entrusted to FDA's scientific judgment. And as discussed herein, courts consistently defer to FDA's expertise on such technical questions and rely on the agency's authoritative designations when evaluating disputes that turn on equivalence, substitutability, and labeling conformity.

## II. RELEVANT FACTUAL BACKGROUND

Vanda holds NDA No. 205677 for Hetlioz® (tasimelteon) oral capsules, 20 mg, which was approved by FDA on January 31, 2014 for the treatment of the sleep disorder "Non-24." A31, ¶31. In January 2018, MSN Labs, through its designated U.S. agent MSN Pharmaceuticals, submitted ANDA No. 211654 ("MSN's ANDA") to FDA that sought approval to manufacture and sell a generic

[3] *See id.* ("drug products listed under the same heading (i.e., identical active ingredients(s), dosage form, and route(s) of administration) and having the same strength … generally will be coded AB if data and information are submitted demonstrating bioequivalence.); available at: https://www.fda.gov/drugs/development-approval-process-drugs/orange-book-preface (last accessed April 21, 2026).

version of Hetlioz® ("Appellees' Generic Product"). A32, ¶9. As explained above, every generic drug has a corresponding reference listed drug ("RLD"), which FDA defines as an approved drug product to which generic versions must demonstrate bioequivalence. *See* 21 C.F.R. § 314.3 (defining "listed drug" and "reference listed drug"); *id*. at § 314.94(a)(3)(i) (requiring an ANDA to identify the RLD). The RLD for Appellees' Generic Product is Hetlioz®. A32, ¶9. On May 28, 2020, FDA tentatively approved ANDA No. 211654, finding Appellees' Generic Product "to be bioequivalent and therapeutically equivalent to the reference listed drug (RLD), Hetlioz® capsules, 20 mg, of [Vanda]." A53, ¶98; A749-A754 (FDA ANDA Tentative Approval Letter). On Jan. 12, 2023, FDA's Final Approval Letter stated that Appellees' Generic Product is "bioequivalent and therapeutically equivalent to the reference listed drug (RLD), Hetlioz." A49, ¶89; A193 (FDA ANDA Approval Letter).

In developing Appellees' Generic Product, MSN relied on a "single-dose, randomized, two-treatment, three-period, partial replicate study" that measured the level of tasimelteon in the blood of healthy male subjects to show bioequivalence with Hetlioz®. *See* A214-286 at A240-A244; A921-A958. This was in compliance with FDA's recommendation for tasimelteon oral capsules. *See* A188. MSN also conducted *in vitro* dissolution studies to confirm that Appellees' Generic Product provided drug release comparable to Hetlioz®. A214. Vimta Labs Ltd. conducted

MSN's BE studies and has performed hundreds of other BE studies for various ANDA filers, including MSN. *See* A223.

Shortly after MSN's ANDA was filed at FDA, Vanda accused MSN of patent infringement. *See* A33 ¶12; A54 ¶103; C.A. No. 18-690-CFC (D. Del. May 2018) (collectively, "the Patent Suits"). In January 2022, Appellees entered into a settlement and license agreement with Vanda that resolved the Patent Suits. A54 ¶104; A68-A94. Through the license, Appellees' Generic Product is lawfully imported, offered for sale, and sold in the United States. *See id*. The license remains in effect. *See* A32, ¶6.

Since June 2023, Amneal (and Impax) have marketed and sold Appellees' Generic Product. *See* A33 ¶13; A55 ¶111. Amneal maintains a public website concerning its generic drug products, which provides information that includes *inter alia* the Active ingredient, Strength, Therapeutic Equivalence ("TE") Rating, and Brand Reference. *See* A774-A780 at A779; *see also* A55 ¶¶112-113; A56 ¶114. Amneal's website entry for Appellees' Generic Product lists "AB" under the column "TE Rating [i.e., Therapeutic Equivalence Rating]" and "Hetlioz®" under the column "Brand Reference." A55 ¶113; A56 ¶114.

On May 16, 2023, Vanda filed a Citizen Petition at FDA that sought to revoke FDA's approval of MSN's ANDA No. 211654. *See* A790-A791. On June 30, 2025, FDA denied Vanda's Citizen Petition, finding no basis to revoke or recall MSN's

ANDA. *See* A921-A958. Vanda spends much of its Brief addressing alleged flaws in MSN's bioequivalence testing that supported FDA's approval of Appellee's Generic Product. *See* DE 23 at 6-8, 13-18, 39-43, 50-51. However, these same alleged flaws that Vanda complains of are squarely within FDA's jurisdiction and expertise, and were addressed by FDA in its denial of Vanda's Citizen Petition. *See* A921-A958.

For example, Vanda argues there were flaws concerning gender and nationality of test subjects in MSN's bioequivalence study. *See* DE 23 at 13, 50. However, FDA has already concluded that the gender and racial / national makeup of the subjects who participated in MSN's bioequivalence testing were acceptable to support a finding of therapeutic equivalence. *See id.* A921-A958 at A929-A943. FDA also addressed alleged data discrepancies, confirming that MSN's dissolution testing aligned with FDA methods and supported quality control. *See id*. at A944-A947. FDA also found Vanda's expert's analyses to be "flawed" and concluded that Vanda's Citizen Petition did not raise any valid concerns about the reliability of the data supporting FDA approval of Appellees' Generic Product. *See id*. at A947-A958. Furthermore, FDA determined that the open-label design of MSN's study did not undermine the results, as PK endpoints are not susceptible to bias. *See id.* at A954, A956; *see also* A937 at fn. 98. Vanda also alleged objectionable conditions at the facility which conducted MSN's bioequivalence studies. *See* DE 23 at 15. However,

FDA reviewed inspection findings at Vimta Labs and concluded that any issues were isolated and did not affect the reliability of MSN's data. *See* A921-A958 at A954-A955. Ultimately, FDA rejected speculative safety concerns and declined to take regulatory actions such as withdrawal or recall, affirming that bioequivalence was demonstrated and no untrue statements were shown. *See id*. at A956-A958.

On September 25, 2023, Vanda filed an action against FDA in the U.S. District Court for the District of Columbia (No. 23-2812-CRC (D.D.C.)) that similarly sought to revoke FDA's approval of MSN's ANDA No. 211654 based on the same allegations discussed in Vanda's Citizen Petition. *See* A871 (citing C.A. No. 23-2812 (D.D.C.)). That action was dismissed by the D.C. District Court under Rule 12(b)(6) for lack of ripeness because, at the time, FDA was "evaluating the same scientific questions presented in this suit through its assessment of Vanda's pending Citizen Petition, which the agency intends to resolve by early next year." A871 (citing No. 23-2812 (CRC), 2024 WL 4133623, at *2 (D.D.C., Sept. 10, 2024)). In dismissing Vanda's complaint, the D.C. District Court agreed with FDA's argument that, "[c]onsistent with core principles of judicial economy and justiciability, the agency should apply its expertise in the first instance and resolve the nearly identical issues raised in Vanda's Citizen Petition before the Court jumps into the fray." 2024 WL 4133623 at *6.

## III. PROCEDURAL HISTORY AND RULINGS PRESENTED FOR REVIEW

Vanda initiated the underlying action by filing its complaint against Appellees on April 23, 2024, alleging: (1) false advertising in violation of the Lanham Act (15 U.S.C. § 1051, *et seq*.); (2) fraudulent inducement; (3) breach of express representation; (4) violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532(a); (5) violation of the Delaware unfair competition laws; and (6) fraud in connection with sale or advertisement merchandise under N.J. Stat. § 56:8-2. *See* A30-A67. For claims 1 and 4-6, Vanda pointed to Amneal's webpage, which states that Hetlioz® is the "Brand Reference" for Appellees' Generic Product as well as allegedly false and misleading statements in the FDA-approved labeling for that product concerning the absolute bioavailability, elimination, and mean terminal elimination half-life for main metabolites of Appellees' Generic Product. *See* A56 ¶¶114-117; A57 ¶118, A58 ¶¶125-129; A59 ¶¶130-131. For claims 2 and 3, Vanda alleged that MSN deliberately concealed material facts about the bioequivalence of Appellees' Generic Product to Hetlioz® and violated multiple laws in representing Appellees' Generic Product as equivalent to Hetlioz®, representing that Hetlioz® is the "Brand Reference" for Appellees' Generic Product, and alleged misbranding in MSN's labeling for its Generic Product. A61 ¶¶144-145; A62 ¶¶155-156; A63 ¶157.

On July 31, 2024, Appellees moved to dismiss Vanda's Complaint under Rules 12(b)(1) and 12(b)(6). A781-808. Appellees argued, in part, that Vanda's

Lanham Act false advertising claim was precluded by the FDCA and, given the federal claims were subject to dismissal, that the Court should decline to exercise supplemental jurisdiction over Vanda's state law claims (Counts II-VI), and that those claims also be dismissed. *See id*.

In the Report and Recommendation ("R&R") dated August 14, 2025, Magistrate Judge Christopher J. Burke agreed with Appellees, and recommended all of Vanda's claims be dismissed. *See* A6-29. In the R&R, Magistrate Judge Burke correctly recognized that Vanda failed to plead a plausible claim for false advertising under the Lanham Act because all of Vanda's false advertising claims are precluded by the FDCA. *See* A22-23 ("Thus, there can also be no doubt that adjudication of Plaintiff's Lanham Act claim would require the Court to assess—and potentially second-guess—FDA's decision-making and its enforcement of the FDCA's provisions … . Therefore, these sorts of Lanham Act claims are clearly precluded."). The R&R also correctly reasoned that, because Vanda's only federal cause of action is subject to dismissal, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. *See* A27 (explaining that there is "no affirmative justification to exercise supplemental jurisdiction over the state law claims.").

Vanda objected to the R&R and attempted to argue that its Lanham Act claim is not precluded by the FDCA. A595-974. Appellees filed a response in opposition

to Vanda's objections. A975-996. The District Court overruled Vanda's objections, adopted the R&R, and dismissed Vanda's complaint in its entirety. A2-5.

In its September 19, 2025 Order dismissing the case, the District Court agreed that Vanda's Lanham Act claim is precluded "because it is premised on Plaintiff's assertion that FDA should not have approved Defendants' ANDA." A4. The Court further explained that, "even after *POM Wonderful*, Lanham Act claims are precluded to the extent that they challenge enforcement determinations made by FDA pursuant to its exclusive authority under the Federal Food, Drug, and Cosmetic Act (FDCA), or to the extent that they challenge FDA decisions where the agency has taken positive regulatory action." *Id*. The Court also distinguished the cases relied on by Vanda—many of which Vanda *still* attempts to rely on in its Appeal—and pointed out that several of those cases "even undermine Plaintiff's position." A4-A5. The Court also agreed with the R&R that the District Court should decline to exercise supplemental jurisdiction over Vanda's state law claims. *See* A6.

Following the full dismissal by the District Court, Vanda initiated this Appeal on October 20, 2025.

## SUMMARY OF THE ARGUMENT

**I.** The District Court was correct when it concluded Vanda failed to plead a plausible claim for false advertising under the Lanham Act (15 U.S.C. § 1051, *et seq.*) because all of Vanda's false advertising claims are precluded by the FDCA.

**A.** Vanda attempts to use the Lanham Act as a vehicle to enforce the FDCA. This is not permissible, and the Supreme Court's decision in *Pom Wonderful* does not alter this long-standing principle. While the FDCA does not *categorically* preclude false advertising claims under the Lanham Act, preclusion *does* apply when such claims require a court to contradict or second-guess a conclusion already made by FDA in approving a generic drug. The cases upon which Vanda attempts to rely are easily distinguishable, as they concerned food and beverage products (not drugs), or drugs that were not subject to FDA approval. As the District Court correctly reasoned, adjudication of Vanda's Lanham Act claim would require the Court to assess and second-guess FDA's decision-making and enforcement of the FDCA and, therefore, such claims are precluded.

**B.** None of Appellees' complained-about advertisements on Amneal's website or data included on the label for Appellees' Generic Product are false or misleading, and all were approved by FDA. The "Brand Reference" statement on Amneal's website is neither false nor misleading, and is within the scope of FDA's approval of Appellees' Generic Product. Additionally, the half-life data at issue was approved by FDA to be included on the label. FDA has already determined that Appellees' Generic Product is both bioequivalent and therapeutically equivalent to Vanda's Hetlioz® product. Thus, statements in the FDA-approved label for Appellees' Generic Product, as well as statements on Defendant Amneal's website

concerning the brand reference for Appellees' Generic Product, conform with FDA's factual findings underlying its approval of Appellees' Generic Product, and cannot form the basis for the false advertising claim.

**C.** Because the District Court dismissed Vanda's Lanham Act false advertising claims as precluded, it did not reach Appellees' additional argument that Vanda failed to plausibly plead the elements of that claim. As a result, that issue was not addressed by the District Court and is therefore not properly before this Court on appeal. Nevertheless, because Vanda raised arguments addressing this ground for dismissal in its Opening Brief, Appellees respond below and explain that Vanda failed to adequately plead that the challenged statements are false or misleading, that they have a tendency to deceive or materially influence purchasing decisions, or that they are likely to cause any injury. Therefore, Vanda did not plausibly plead its Lanham Act claim.

**D.** Vanda's Lanham Act claim—by requiring courts to effectively re-evaluate FDA determinations on bioequivalence, therapeutic equivalence, and drug safety and efficacy—would foster excessive litigation, create regulatory inconsistency, and undermine FDA's congressionally assigned authority and scientific expertise.

**II.** The District Court was correct when, after dismissing Vanda's only federal claim, it declined to exercise supplemental jurisdiction over Vanda's remaining state law claims and dismissed Vanda's Complaint in its entirety.

## STANDARD OF REVIEW

The Court reviews the District Court's dismissal of Appellants' claims *de novo*. *McCafferty v. Newsweek Media Grp., Ltd.,* 955 F.3d 352, 356 (3d Cir. 2020).

To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations "must provide more than labels, conclusions, or a 'formulaic recitation' of the claim elements." *Zogenix, Inc. v. Apotex Inc*., No. 21-1252, 2023 WL 5835828, *1 (D. Del. Sept. 8, 2023).

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY DISMISSED VANDA'S FALSE ADVERTISING CLAIMS.

#### A. Vanda's Lanham Act Claim (I) Is Precluded.

Federal law precludes Vanda's Lanham Act claim, as FDA has already approved Appellees' Generic Product. In approving Appellees' Generic Product, FDA determined that it is both bioequivalent and therapeutically equivalent to Vanda's Hetlioz® (tasimelteon) product. Thus, statements in the FDA-approved label for Appellees' Generic Product, as well as statements on Amneal's website

concerning the scope of FDA's approval, conform with FDA's factual findings underlying its approval of Appellees' Generic Product.

Vanda's attempts to argue that the FDCA and Lanham Act "complement each other" and there is not preclusion in this specific instance relies on faulty statutory interpretation, as the cases cited by Vanda largely dealt with food and beverage products (not drugs) and, in all cases, no drug products that were approved by FDA. Unlike the cases Vanda attempts to rely upon, here, as Magistrate Judge Burke explained in his R&R, "there can [] be no doubt that adjudication of Plaintiff's Lanham Act claim would require the Court to assess—and potentially second-guess—FDA's decision-making and its enforcement of the FDCA's provisions," (*see* A16) and therefore Vanda's Lanham Act claims are precluded by the FDCA.

In attempting to argue otherwise, Vanda is asking this Court to revisit FDA's approval decision, as well as FDA's more recent denial of Vanda's Citizen Petition, which concerned the same arguments Vanda now makes with respect to testing conducted of Appellees' Generic Product. All of the allegedly false or misleading statements that form the basis of Vanda's Lanham Act claims would require the courts to re-evaluate factual claims by Vanda that FDA has already considered and conclusively addressed. This cannot stand, as would open the courts to a mountain of unnecessary litigation in which district courts would be required to second-guess FDA's own findings on bioequivalence, therapeutic equivalence, drug safety, and

drug efficacy. This would not only flood the courts with these types of challenges, but also muddy the waters for drug manufacturers seeking FDA approval of their products.

**1. The FDCA precludes Vanda's Lanham Act false advertising claim where FDA already approved Appellees' Generic Product.**

Vanda dedicates the initial portion of its Opening Brief to asserting that the FDCA and the Lanham Act are harmonious, claiming that there is no statutory preclusion. *See* DE 23 at 25-37. However, Vanda's argument is built on a flawed interpretation, which is directly contradicted by the very cases it cites.

First, Vanda's Opening Brief suggests that Appellees argue for categorical preclusion—that the FDCA always precludes Lanham Act false advertising claims. This is a mischaracterization of Appellees' stance and the District Court's findings. *See* A16 ("The fact that Congress delegated enforcement authority to the FDA with regard to certain drug-related matters covered by the FDCA does not categorically preclude Lanham Act claims that are based on the false labeling of food or drugs."). Appellees acknowledge that the FDCA and Lanham Act are capable of coexistence without conflict in numerous scenarios and do not argue for the Lanham Act's "repeal by implication". *See* DE 23 at 29. Specifically, although the FDCA does not universally preclude Lanham Act claims related to false advertising of food and drugs, claims that "call on courts to contradict a conclusion of the FDA or to make

an original determination on an issue committed to the FDA's discretion" are precluded. *See* A18 (quoting *Belcher Pharm., LLC v. Hospira, Inc.* 1 F.4th 1374, 1379 (11th Cir. 2021)). In this case, Vanda's claims are precluded because they fundamentally question, and ask this Court to question and assess, FDA's approval of MSN's ANDA.

Vanda argues that there can be no preclusion because the Lanham Act and FDA "complement each other in major respects," "do not conflict," and "serve expressly difference purposes." *See* DE 23 at 30, 31. This argument oversimplifies the preclusion issue, and relies on cases that are not analogous to the current dispute. Notably, the cases upon which Vanda relies involved food and beverage products and certain drug products that lacked, or were not subject to, FDA's approval. In contrast, Vanda's claims in this matter directly challenge FDA's decision to approve MSN's ANDA (i.e., an application for FDA approval of a generic drug), which is a critical distinction and requires preclusion in this circumstance.

Vanda relies heavily on *Pom Wonderful v. Coco-Cola Co*., 573 U.S. 102 (2014), throughout its brief for the proposition that the FDCA does not preclude Lanham Act claims. While *Pom Wonderful* is a key case regarding FDCA preclusion, this case analyzed food and beverage labeling that was not approved by FDA—not drugs that already received and maintained FDA approval. In *Pom Wonderful*, the plaintiff alleged that the defendant's juice product was deceptively

labeled as "pomegranate blueberry" while containing only 0.3% pomegranate juice and 0.2% blueberry juice. *See* 573 U.S. at 105, 110. In finding that the plaintiff's false advertising claim was not precluded by the FDCA, the Supreme Court specifically held that "*food and beverage labels* regulated by the FDCA are not, under the terms of either statute [i.e., the FDCA and Lanham Act], off limits to Lanham Act claims." 573 U.S. 102, 113 (2014). In doing so, the Court contrasted food and beverage labels—*which are not pre-approved by FDA*—with "FDA's regulation of other types of labels, *such as drug labels*, *see* 21 U.S.C. § 355(d), and is consistent with the less extensive role the FDA plays in the regulation of food than in the regulation of drugs." *Id*. at 109 (emphasis added). Here, in contrast to the labeling at issue in *POM Wonderful*, the label for Appellees' Generic Product *was pre-approved by FDA*. This is a clear distinction supported by the Supreme Court's language in *Pom Wonderful*.

In its Opening Brief, Vanda recognizes that *Pom Wonderful* "specifically concerned FDA's regulation of food and beverage labels," but then argues that "the rationale underlying *Pom Wonderful* applies equally to drug products." D.E. 23 at 32-33. However, none of the other cases upon which Vanda relies supports this conclusion in the context of generic drug products subject to FDA pre-market approval. For example, Vanda attempts to rely upon *Belcher Pharms., LLC v. Hospira, Inc*., 1 F.4th 1374, 1380 (11th Cir. 2021). However, *Belcher* concerned a

suit filed against a manufacturer of epinephrine products that were *not* FDA approved, but allegedly included misleading statements in labeling that implied FDA approval had been received. *See Belcher Pharms., LLC*, 1 F.4th at 1381. This is clearly distinct from the facts at hand as, here, Appellees' Generic Product and its labeling *did* receive FDA approval. Moreover, *Belcher* explicitly recognized that the Supreme Court's decision in *Pom Wonderful* considered preclusion between the FDCA and Lanham Act only for food and beverage labels—not drug labels. *See id*. at 1380 ("For food and beverage labels, then, the answer is clear—Lanham Act suits can go forward."). Belcher further recognized that "it is well understood that *drug approval is a demanding and complicated process*." *Id*. (emphasis added). In discussing *POM Wonderful* and recognizing that the FDCA does still preclude Lanham Act claims in some circumstances, the Eleventh Circuit in *Belcher* noted that "there may be reasons to disallow label challenges involving certain drug claims that call on courts to contradict a conclusion of the FDA or to make an original determination on an issue committed to FDA's discretion." *Id*. at 1380, n.6. In finding that the false advertising claim was not precluded by the FDCA, the Eleventh Circuit explicitly recognized that "Belcher's challenge is to drug-package inserts that—like food and beverage labels—have not received preapproval from the FDA and that Hospira believes do not require preapproval. *Belcher is thus not asking us to contradict any regulatory conclusion reached by the FDA*." *Id*. at 1380-81. Unlike

the product at issue in *Belcher*, Appellees' Generic Product is FDA-approved, and, again, Vanda is asking this Court to contradict a conclusion reached by FDA and re-affirmed by the FDA when it rejected Vanda's Citizen Petition.

Next, Vanda attempts to rely on *Eli Lilly & Co. v. Alderwood Surgical Ctr*., No. 2:24-878, 2025 WL 745670 (W.D. Wash. 2025) for the proposition that there is a general presumption that Lanham Act claims are not precluded by the FDCA. *See* DE 23 at 33-34. However, again, this case is plainly distinguishable. In *Eli Lilly & Co.*, the FDA approval holder for Mounjaro® and Zepbound® (tirzepatide) products sued two medical clinics that were using Eli Lilly & Co.'s trademarks to advertise and solicit business for patients to receive compounded tirzepatide that was not FDA-approved and did "not go through the FDA's approval process and so are not tested for safety, quality, or efficacy in clinical trials." 2025 WL 745670, *2. Unlike the products at issue in *Eli Lilly & Co.*, there is no dispute here that Appellees' Generic Product was clinically tested and is FDA approved. Rather, Vanda's false advertising claims rely entirely on allegations that MSN's clinical testing should not have led to FDA approval and that MSN's FDA-approved labeling is inaccurate and misleading due to alleged flaws in MSN's bioequivalence studies. The holding in *Eli Lilly & Co.* has no bearing on this case, as the court there specifically recognized that dispute was *not* "an FDCA labeling and discourse question," but instead whether "[Defendants'] advertising creates the false impression that the compounded drugs

it offers are FDA-approved and clinically tested." 2025 WL 745670, *7. Unlike *Eli Lilly & Co.*, the present dispute *is* an FDCA labeling and discourse question regarding a drug product that was approved (and subsequently upheld) by FDA as safe, effective, and equivalent to Hetlioz®.

Vanda's attempts to rely on two other district court cases, *Pacira BioSciences v. Ventis Pharma., Inc*. and *Novo Nordisk A/S v. IV Harmony Clinic LLC*, is similarly misplaced, as both concerned the sales and marketing of compounded drug products, which, like those at issue in *Eli Lilly & Co*., were *not* subject to FDA approval. *See* A967, A970-971, A983 (discussing *Pacira BioSciences, Inc. v. Ventis Pharma., Inc*., No. 2:24-cv-07554-MRA-RAO, 2025 WL 576549, at *2 (C.D. Cal. Jan. 17, 2025); and *Novo Nordisk A/S v. IV Harmony Clinic LLC*, No. 8:24-cv-2292-MSS-CPT, 2025 WL 1124969, at *1 (M.D. Fla. April 16, 2025)). Unlike what Vanda suggests, *Pacira* and *Novo Nordisk* were limited to analyzing a Lanham Act claim "for injuries suffered by a competitor as a result of *a false assertion that [FDA]-approval had been granted*." *See Pacira BioSciences,* 2025 WL 576549, at *5 (emphasis added); *see also Novo Nordisk A/S,* 2025 WL 1124969, at *3 ("Here, Plaintiffs allege [Defendant] made direct statements that their products were FDA-approved when they were not.").

In contrast to the drug products at issue in *Eli Lilly & Co.*, *Pacira BioSciences*, and *Novo Nordisk* that were not subject to FDA approval, here, FDA has already

weighed in and exercised its discretion in approving Appellees' Generic Product as an AB-rated generic that is bioequivalent to Hetlioz® on the basis of MSN's ANDA and the bioequivalence studies contained therein. Appellees' Generic Product has been approved by FDA, and Vanda's claims hinge on that approval because Vanda is attempting to challenge FDA's finding that Appellees' Generic Product is bioequivalent to Hetlioz®. In other words, this is precisely the kind of Lanham Act claim that, after *POM Wonderful*, remains precluded by the FDCA. None of the cases cited by Vanda alters this conclusion correctly reached by the District Court.

Vanda's reliance on *Gilead Scis., Inc. v. Meritain Health, Inc.*, No. 1:24-CV-03566-JRR, 2025 WL 1745669 (D. Md. June 24, 2025) is also misplaced. There, the manufacturer of an FDA-approved drug sued an insurance provider for filling a prescription using the same manufacturer's drugs that were designated for exclusive distribution outside the United States. *See Gilead Scis., Inc.*, 2025 WL 1745669, at *4. First, this case is clearly distinguishable because there was no false advertising claim at issue. Instead, the court analyzed preclusion only in the context of trademark infringement and unfair competition claims. *See id*. Moreover, in *Gilead Scis., Inc.*, the court specifically held that "FDCA does not bar (or preempt) recovery under the Lanham Act simply because the claim … is founded on allegations of conduct also prohibited by the FDCA, *provided adjudication of the Lanham Act claim does not require interpretation or application of the FDCA*." *Id*. at *27 (emphasis added).

Unlike what Vanda suggests, the District Court did not find preclusion of Vanda's false advertising claim "simply because the claim overlaps with FDA regulatory authority." DE 23 at 37. Instead, Vanda's false advertising claim is precluded because it requires interpretation and application of the FDCA (i.e. whether Appellees' Generic Product is bioequivalent to Hetlioz® (and therefore "AB-rated" with Hetlioz®)), and whether Hetlioz® is the "Reference Listed Drug" for Appellees' Generic Product—an analysis already undertaken by FDA and within FDA's purview. *Gilead Scis., Inc.* supports that such a Lanham Act claim is indeed precluded by the FDCA. *See id*. at *26 ("Accordingly, where a private action brought under the Lanham Act necessarily requires a court interpret or apply the FDCA to reach the merits, the plaintiff's action is disallowed as an improper effort to conscript the Lanham Act as a 'vehicle by which to enforce the FDCA.'") (quoting *Impact Apps., Inc. v. Concussion Mgmt, LLC*, No. 19-3108, 2021 WL 978823, at *5 (D. Md. Mar. 16, 2021).

*Pom Wonderful* did not change this understanding. In the wake of *Pom Wonderful*, numerous courts have distinguished the decision, holding that Lanham Act claims are precluded by the FDCA to the extent they challenge enforcement determinations traditionally reserved to the FDA, or contest FDA decisions where the agency has already taken affirmative regulatory action. *See, e.g.*, *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 64 (2d Cir. 2016) ("[R]epresentations

commensurate with information in an FDA label generally cannot form the basis for Lanham Act liability."); *JHP Pharm., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 999 (C.D. Cal. 2014) (Lanham Act claims precluded if they "turn[] on the content of a drug label, especially if that drug label were preapproved by the FDA," or if they are grounded upon a "conflict with an affirmative policy judgment of the FDA" or when agency expertise is necessary to resolve the dispute); *Exela Pharma Scis., LLC v. Sandoz, Inc.*, 486 F. Supp. 3d 1001, 1024-25 (W.D.N.C. 2020) (dismissing Lanham Act claims as precluded because plaintiff's claims "'turn[ed] on the content' of something that was 'previously preapproved by the FDA" (citing *JHP*, 52 F. Supp. 3d at 998)); *Hi-Tech Pharms., Inc. v. Hodges Consulting, Inc.*, 230 F. Supp. 3d 1323, 1330 (N.D. Ga. 2016) (explaining that, following *Pom Wonderful*, Lanham Act claims are precluded when they "would require a court to make determinations about the safety, legality, and classification of new drugs that are more properly within the exclusive purview of the FDA.").

Additionally, Vanda's assertion that it is not attempting to enforce the FDCA but is instead seeking damages under the Lanham Act for false advertising is a distinction without substance. All the advertising statements Vanda challenges are directly linked to FDA approval of Appellees' Generic Product as bioequivalent to Hetlioz® and as "AB-rated" with Hetlioz®. Vanda's Lanham Act claim is precluded

because it hinges on matters entrusted to FDA's discretion, and more critically, on issues where FDA has already taken definitive action.

**2. There is an irreconcilable conflict between Vanda's False Advertising Claim and the FDCA.**

Vanda argues that Appellees specifically violated the Lanham Act by: 1) representing Hetlioz® as the "Brand Reference" for Appellees' Generic Product on Amneal's website; and 2) including certain data about the mean-elimination half-life of Appellees' Generic Product on Amneal's label. Vanda's argument that these statements are "not incompatible" with FDA's approval of MSN's ANDA ignores the fact that FDA found Appellees' Generic Product to be bioequivalent to Hetlioz®, and that the label at issue was approved by FDA. Because of this, there is an irreconcilable conflict between the FDA approval process and the purportedly false statements that form the basis of Vanda's Lanham Act claim.

**a) The "Brand Reference" statement on Amneal's website is neither false nor misleading, and is within the scope of FDA's approval of Appellees' Generic Product.**

Vanda's assertion that the FDCA does not require defendants to make false or misleading equivalence statements on a website overlooks the inherent connection between these statements and FDA determinations that were already made. Contrary to Vanda's position, the representation of Hetlioz as the "Brand Reference" for

Appellees' Generic Product on Amneal's website is not a "false statement of equivalence." *See* DE 23 at 38.

As Vanda acknowledges, FDA approved Appellees' Generic Product with Hetlioz® as the "reference listed drug." *See* A193. As explained herein, the reference listed drug is FDA's formal designation of the specific brand-name product against which applicant generics must demonstrate bioequivalence and to which labeling must conform. *See* 21 C.F.R. § 314.3 (defining reference listed drug as "the listed drug identified by FDA as the drug product upon which an applicant relies in seeking approval of its ANDA"). To obtain FDA approval, an ANDA applicant must "rel[y] on FDA's previous finding that the reference listed drug is safe and effective." 21 C.F.R. § 314.94(a). "To rely on this finding, *an ANDA applicant must provide sufficient information to show that its drug product is bioequivalent to the RLD*." *Id*. (emphasis added). In other words, an ANDA will not be approved by FDA unless and until FDA finds that the applicant sufficiently evidences bioequivalence. Vanda's argument that "FDA does not determine whether a drug is in fact bioequivalent" (DE 23 at 39) is contradicted by the terms of the FDCA, which require an ANDA application to present sufficient evidence to show bioequivalence. *See* 21 C.F.R. § 314.94(a).

Here, the listing of Hetlioz® as the "Brand Reference" for Appellees' Generic Product is literally true because FDA identified Hetlioz® as the reference listed drug

for Appellees' Generic Product and therefore found Appellees' Generic Product to be bioequivalent to Hetlioz®. *See* A193 ("*We [i.e. FDA] have determined your Tasimelteon Capsules, 20 mg, to be bioequivalent and therapeutically equivalent to the reference listed drug (RLD), Hetlioz Capsules, 20 mg, of Vanda Pharmaceuticals, Inc. (Vanda)*.") (emphasis added). MSN's ANDA could not have been approved unless FDA found it to be bioequivalent to Hetlioz®, and FDA did indeed find it to be bioequivalent. *See id*.

Vanda's argument that the exact phrase "Brand Reference" is not an FDCA term (DE 23 at 39) is meritless. This phrase is "'similar enough to the FDA-approved statements [i.e. the term "reference listed drug"] for the Court to conclude, as a matter of law, that it is neither false nor misleading.'" *Apotex Inc. v. Acorda Therapeutics, Inc.,* No. 11 CIV. 8803 AT, 2014 WL 5462547, at *8 (S.D.N.Y. Oct. 23, 2014), *aff'd*, 823 F.3d 51 (2d Cir. 2016) (quoting *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y .1998) (explaining that promotional statements for a drug need not "correspond precisely to statements that the FDA has approved" for the court to find that they are non-actionable under the Lanham Act)). Nor does it matter, as Vanda argues, that the statement at issue appeared on Amneal's website. *Wyeth v. Sun Pharm. Indus., Ltd.*, No. 09-cv-11726, 2010 WL 746394, at *6-7 (E.D. Mich. Mar. 2, 2010) (dismissing Lanham Act claims arising from defendants' statements on their website to the effect that their product was a

generic equivalent of the plaintiff's branded drug); *see also* 21 U.S.C. § 321(m) ("The term "labeling" means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article.").

Vanda argues that the FDCA does not preclude Lanham Act claims based on "false or misleading statements of equivalence," and relies heavily on *Mylan Laboratories, Inc. v. Matkari* for support for this argument. The Fourth Circuit in *Mylan* found standing for certain Lanham Act claims based on allegations that FDA employees had accepted bribes from defendants and that "[FDA] approval of the defendants' ANDAs had been obtained through 'fraud' *and [were] ultimately withdrawn*." *See* 7 F.3d 1130, 1136, n. 8, 1138 (4th Cir. 1993) (emphasis added). In contrast, Vanda's claims boil down to allegations concerning the scientific validity of MSN's bioequivalence studies and whether MSN's ANDA was properly approved by FDA. And unlike *Mylan*, Vanda's complaint includes no factual allegations that FDA or its employees were complicit with the alleged faults with MSN's bioequivalence study. Nor has FDA approval for MSN's ANDA been withdrawn, as was the case in *Mylan*. To the contrary, approval was upheld despite Vanda's Citizen Petition challenging FDA's determination. Here, there is no dispute that MSN's ANDA and label for its Generic Product was, and remains, approved by FDA as an "AB"-rated therapeutic equivalent of Hetlioz®.

Vanda's reliance on *G&W Lab'ys, Inc. v. Laser Pharms, LLC* is similarly misplaced. The court in *G&W Lab'ys, Inc.* explicitly recognized that a Lanham Act claim may be precluded by the FDCA "where it turns on the content of a drug label, especially if that drug label was previously approved by the FDA." No. 3:17-CV-3974-BRM-DEA, 2018 WL 3031943, *7 (D.N.J. June 19, 2018) (internal quotations omitted). Thus, the District Court was correct in distinguishing *Mylan* and its progeny as involving Lanham Act claims against drug products that were not FDA-approved. *See* A24-A25; A26, n.11.

In its Opening Brief, Vanda attempts to mischaracterize statements as merely voluntary marketing claims. However, the statements at issue are directly tied to the FDA's approval of MSN's ANDA, which included a determination of bioequivalence to the reference listed drug Hetlioz®. Therefore, listing Hetlioz® as the "Brand Reference" for Appellees' Generic Product is not a marketing claim invented by Appellees, but instead reflects a decision by FDA. By alleging that this statement is false or misleading, Vanda is effectively asking the court to reevaluate the FDA's scientific determination of equivalency, which is beyond the scope of the Lanham Act and intrudes upon FDA's regulatory authority.

**b) The half-life data is neither false nor misleading, and was approved by FDA to be included on the label.**

Vanda next argues that Appellees use "false half-life data" on the label for Appellees' Generic Product. DE 23 at 44. There are several flaws in Vanda's

argument. First, as discussed above, FDA assessed this data and approved Appellees' Generic Product and its proposed labeling. For example, FDA assessed the half-life data from Appellees' Generic Product with that from the reference product tested by MSN, Hetlioz®, and considered the similarity between them "sufficient." *See* A244 ("The washout period of 05 days was longer than 5 x $t_{1/2,elim}$ (mean $t_{1/2,elim}$: approximately 1.556 hours for the test and 1.543 hrs for the reference products) and considering the elimination half-life of approximately 1.3 to 3.7 hours, per the RLD labeling, thus considered sufficient"). Vanda alleges that flaws in the bioequivalence study led to that allegedly "false" data. But FDA already addressed those supposed study "flaws" and rejected them in denying Vanda's Citizen Petition.

Moreover, because the half-life data at issue is "consistent with the FDA label, they cannot provide the basis for a Lanham Act false advertising claim." *Apotex Inc. v. Acorda Therapeutics, Inc.,* No. 11 CIV. 8803 AT, 2014 WL 5462547, at *8 (S.D.N.Y. Oct. 23, 2014), aff'd, 823 F.3d 51 (2d Cir. 2016) (citing *Mylan Pharm., Inc. v. Procter & Gamble Co.,* 443 F.Supp.2d 453, 459 (S.D.N.Y. 2006); *Cytyc Corp.,* 12 F. Supp. 2d at 301) (granting motion to dismiss because "representations ... that comport substantively with statements approved as accurate by the FDA cannot supply the basis for [Lanham Act] claims")). Vanda fails to identify a single

case—nor could it— in which a Lanham Act claim was permitted to proceed based on allegations that FDA-approved label data was false.[4]

Vanda argues, without support, that FDA "does not focus review on the contents of an ANDA label" and that FDA does not "sanction[] the veracity of every statement within a label." *See* DE 23 at 46. Contrary to Vanda's position, FDA does not clear labels that contain statements it deems untrue, unsupported, or misleading in any material respect. If any statement on the proposed label were inaccurate or misleading, FDA would require revision as a condition of approval or would withhold approval entirely. Thus, when FDA approves an ANDA label, it necessarily determines that the label, as approved, contains only statements the Agency has found to be truthful and non-misleading. *See* 21 C.F.R. § 314.94(a) (requiring that an ANDA applicant "provide sufficient information to show that its drug product is bioequivalent to the RLD."); *BTG Int'l Ltd. v. Amneal Pharms. LLC*,

[4]Vanda cites *Apotex Inc. v. Acorda Therapeutics, Inc.,* 823 F.3d 51 (2d Cir. 2016) for the proposition that "[t]he Lanham Act provides a remedy, regardless of whether the label is FDA approved." DE 23 at 44. However, there, the Second Circuit stated that "Lanham Act liability might arise if an advertisement uses information contained in an FDA-approved label *that does not correspond substantially to the label*, or otherwise renders the advertisement literally or implicitly false." *Apotex, Inc.*, 823 F.3d at 64, n.10. That provides no support for Vanda's position as, here, the half-life data at issue appears in the FDA-approved label. Appellees are not using information "that does not correspond substantially to the label, or otherwise renders the advertisement literally or implicitly false". Indeed, the Second Circuit explicitly held "that representations commensurate with information in an FDA label generally cannot form the basis for Lanham Act liability." *Id*. at 64.

352 F. Supp. 3d 352, 391 (D.N.J. 2018) (explaining that "'Indications and Usage'" section of an FDA-approved "label must set forth indications that are supported by 'substantial evidence of effectiveness based on adequate and well-controlled studies.'" (quoting 21 C.F.R. § 201.57(c)(2)(iv)).

Vanda also argues that FDA "does not evaluate a generic product's 'switchability' with a brand drug." DE 23 at 26-27. First, neither the label nor Appellees' marketing materials (including statements on Amneal's website at issue here) say anything about "switchability" of Appellees' Generic Product with Hetlioz®. Moreover, this is incorrect. As explained, during FDA's examination of an ANDA, it must determine that the generic drug is a to the reference listed drug (in this case, Hetlioz®). "Therapeutic equivalents" are "approved drug products that are pharmaceutical equivalents for which bioequivalence has been demonstrated, and that can be expected to have the *same clinical effect and safety profile* when administered to patients under the conditions specified in the labeling." 21 C.F.R. § 314.3 (emphasis added); *see also BTG Int'l Ltd. v. Amneal Pharms. LLC*, 352 F. Supp. 3d 352, 369 (D.N.J. 2018) ("The FDA will approve a new medication if there is substantial evidence of safety and effectiveness."). Therefore, contrary to Vanda's position, FDA did deem Appellees' Generic Product as interchangeable to Vanda's Hetlioz®.

### 3. Public policy favors FDCA preclusion when Lanham Act claims question FDA approval of generic drugs.

Allowing Vanda's claims against an FDA-approved product to proceed invites excessive litigation that would require courts to revisit, second-guess, and effectively re-adjudicate FDA's core scientific determinations regarding bioequivalence, therapeutic equivalence, and drug safety and efficacy. That outcome is both impractical and improper.

First, FDA is the expert agency Congress charged with evaluating whether generic drugs are bioequivalent and therapeutically equivalent to a reference listed drug. Permitting private litigants to effectively relitigate these determinations would embroil courts and juries in precisely the kinds of complex assessments that the FDA is institutionally equipped to perform.

Second, private litigation challenging products that have already satisfied FDA's rigorous approval and equivalence requirements would disrupt the uniformity and predictability the FDCA is designed to ensure. If courts across jurisdictions were to reassess bioequivalence in case-by-case lawsuits, manufacturers could face inconsistent obligations and conflicting outcomes, and risk liability even if their advertisements were reflective of FDA's prior decision. *See Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 64 (2d Cir. 2016) ("This principle [i.e., deference to FDA for issuing drug labels] rightfully insulates pharmaceutical companies from liability when they engage in First Amendment

speech that is consistent with the directive of the regulatory body having oversight of product labels."). That would deter competition by manufacturers of FDA-approved generics and ultimately impede patient access to affordable medicines.

In sum, Vanda's claims—by requiring courts to effectively re-evaluate FDA determinations on bioequivalence, therapeutic equivalence, and drug safety and efficacy—would foster excessive litigation, create regulatory inconsistency, and undermine the FDA's congressionally assigned authority and scientific expertise.

### B. Vanda Failed to Plausibly Plead Any Cause of Action for False Advertising under the Lanham Act.

Because the District Court dismissed Vanda's Lanham Act false advertising claim as precluded, it did not reach Appellees' additional argument that Vanda failed to plausibly plead the elements of that claim. As a result, that issue was not addressed by the District Court and is therefore not properly before this Court on appeal. Vanda appears to recognize this, as it states that the Court should "remand for further proceedings, including an opportunity for the district court to address any renewed Rule 12(b)(6) arguments in the first instance." *See* DE 23 at 48. Nonetheless, Vanda still presents several pages of argument that it "plausibly alleged the elements of a Lanham Act claim." *Id*. at 48. Because Vanda raises the issue in its appellate briefing, Appellees set forth below their argument that Vanda failed to plausibly plead any Lanham Act false advertising claim.

As an initial matter, to plead a Lanham Act false advertising claim, a plaintiff must plausibly allege:

> (1) that the defendant has made false or misleading statements as to the defendant's own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, …

*Reybold Grp. of Companies, Inc. v. Does 1–20*, 323 F.R.D. 205, 209-10 (D. Del. 2017)); *see also* 15 U.S.C. § 1125(a)(1)(B).

False or misleading statements under the Lanham Act must be "either (1) literally false or (2) literally true or ambiguous, but ha[ving] the tendency to deceive consumers." *Groupe SEB U.S., Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014). "A determination of literal falsity rests on an analysis of the message in context." *Johnson & Johnson-Merck v. Rhone-Poulenc Rorer*, 19 F.3d 125, 129 (3d Cir. 1994). "Unless the claim is unambiguous, it cannot be literally false." *Groupe SEB*, 774 F.3d at 198. If not pled as literally false, plaintiff "must [plead] that the statement is deceptive or misleading." *Newborn Bros. Co., Inc. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 347 (D.N.J. 2020). "[W]hen a plaintiff alleges that an advertisement is misleading, but not literally false, it bears an 'additional burden … to show that the advertisement … conveys a misleading message to the viewing public.'" *Azurity Pharms., Inc. v. Edge Pharma, LLC,* 45 F.4th 479, 487 (1st Cir.

2022). Conclusory allegations "that the statements could give a misleading impression" do not satisfy a plaintiff's pleading burden. *Id.* Finally, as discussed herein, FDA findings are non-actionable under the Lanham Act. *See, e.g., Apotex Inc. v. Acorda Therapeutics, Inc*., 823 F.3d 51 (2d Cir. 2016).

On a motion to dismiss, courts "need only undertake a single analysis" of federal and state law unfair competition claims when the elements of the claims are the same. *See GW Labs. Inc. v. Laser Pharms. LLC*, No. 17-3974, 2018 WL 3031943, *7 (D.N.J. June 19, 2018). Because the elements of Vanda's state law claims track the elements of its Lanham Act claims, Appellees address whether Vanda adequately pleaded them as one.

**1. The "Brand Reference" statement and the half-life data are neither literally false nor misleading.**

Vanda first argues that Amneal's representation on its website that Hetlioz® is the "Brand Reference" for Appellees' Generic Product is "literally false or misleading." DE 23 at 49. Vanda argues that the statement is literally false or misleading because of alleged data discrepancies that show that Hetlioz® was either not the reference drug used for MSN's testing, or that MSN's study was so flawed that MSN could not even determine if its own product was comparable to Hetlioz®. *See id*. However, again, any alleged "flaws" or "discrepancies" concerning MSN's testing were already evaluated and dismissed by FDA in rejecting Vanda's Citizen

Petition and, in any event, remain more appropriately decided by FDA than a district court.

Vanda's reliance on *Mylan Lab'ys, Inc. v. Matkari* is again misplaced. The allegations in *Mylan* involved claims that FDA employees had accepted bribes from defendants. *See* 7 F.3d 1130, 1136, n. 8, 1138 (4th Cir. 1993). Moreover, in *Mylan*, the court found that "[FDA] approval of the defendants' ANDAs had been obtained through 'fraud' *and [were] ultimately withdrawn*." *Id*. (emphasis added). There are no claims here that MSN bribed FDA employees, or that MSN otherwise obtained approval for MSN's ANDA through fraud. Moreover, and most critically, FDA's approval for Appellees' Generic Product has not been withdrawn—even after Vanda's Citizen's Petition and litigation against FDA—which FDA fully considered and rejected on the merits.

Next, Vanda similarly alleges that the half-life data appearing on the label is "literally false." *See* DE 23 at 51. Unlike what Vanda suggests, the half-life data does not "communicate a false and misleading impression that the two drugs share the same characteristics such that patients with an existing Hetlioz® prescription can be appropriately switched to MSN's product, when that is not the case." *Id*. There are several flaws in Vanda's argument. First, again, FDA assessed the half-life data from Appellees' Generic Product with that from the reference product tested by MSN, Hetlioz®, and considered the similarity between them "sufficient." *See* A244

("The washout period of 05 days was longer than 5 x $t_{1/2,elim}$ (mean $t_{1/2,elim}$: approximately 1.556 hours for the test and 1.543 hrs for the reference products) and considering the elimination half-life of approximately 1.3 to 3.7 hours, per the RLD labeling, thus considered sufficient").

**2. Vanda did not allege a tendency to deceive or materiality.**

To sustain a false advertising claim, Vanda also must plead that the statements at issue had a tendency to deceive their intended audience and materially influenced purchasing decisions. "Materiality has been shown when there is evidence that customers who purchased a product with a false designation on the packaging 'did so because of the false designation and would have refused to purchase this product if they had known of the fallacious label.'" *Trustid, Inc. v. Next Caller, Inc.*, No. 18-172, 2022 WL 318299, *9 n.15 (D. Del. Jan. 5, 2022).

Vanda alleges that Appellees' sale of the generic product at issue, which is consistent with the product's FDA-approved labeling and its FDA approval as bioequivalent and therapeutically equivalent to the reference listed drug Hetlioz®, "misled" consumers. A59 at ¶131. But Vanda's Complaint contained no well-pled facts to support the conclusion that consumers purchased Appellees' Generic Product *because* of the designation of Hetlioz® as the Brand Reference, or *because* of the labeling's peak concentration or half-life data. For example, Vanda cannot plausibly allege that the FDA-approved labeling for Appellees' Generic Product had

any impact on purchasing or prescribing decisions, and alleging that consumers would not have purchased Appellees' Generic Product if they knew it was not equivalent to or interchangeable with Hetlioz® (for which there is no evidence) is not enough. The Lanham Act requires a direct causal nexus between the alleged misrepresentations and the decision to purchase Appellees' Generic Product. *See Trustid*, 2022 WL 318299, *9.

### 3. Vanda did not plausibly allege a likelihood of injury.

To plausibly allege a cognizable injury based on false advertising, Vanda must sufficiently plead that, but for Appellees' alleged misrepresentations, consumers would have purchased Hetlioz®. *See Locus Telcomms., Inc. v. Talk Global, LLC*, No. 14-1205, 2014 WL 4271635, *6 (D.N.J. Aug. 28, 2014). Here, Vanda cannot allege injury because it cannot plausibly claim, that *but for* the alleged false advertising, consumers would have purchased branded Hetlioz®. Appellees' Generic Product is *one of three*[5] generic tasimelteon products available, and state laws permit, if not require, generic substitution. Thus, if Appellees' Generic Product was not available, prescriptions for generic tasimelteon (or for Hetlioz®) would be filled with another generic, not branded Hetlioz®. While Vanda peppers its

[5] *See* A802 (citing https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=205677 (noting three "therapeutic equivalents" of Hetlioz®: generics from MSN, Apotex, and Teva), last accessed April 21, 2026).

Complaint with conclusory allegations that false advertising "caused sales of tasimelteon … to be diverted from Vanda directly to Defendants," it asserts no facts to support that conclusion (*e.g.*, A60 at ¶139, A64 at ¶166).

## II. THE DISTRICT COURT PROPERLY DISMISSED VANDA'S STATE LAW CLAIMS.

One of Vanda's stated issues on appeal is whether the District Court should retains supplemental jurisdiction over the remaining state law claims. However, Vanda presents no argument as to why the District Court should exercise supplemental jurisdiction over the remaining state law claims if the federal Lanham Act claim is dismissed, and appears to concede that dismissal of the remaining state law claims should be upheld if the Lanham Act dismissal is upheld. However, should this Court sustain Vanda's appeal regarding the Lanham Act claim, then this matter should be remanded for further adjudication of Appellees' arguments for dismissal of Vanda's state law claims (i.e., Counts II-VI of Vanda's Complaint).

## CONCLUSION

For the foregoing reasons, Appellees respectfully request that the Court affirm the District Court's order dismissing Vanda's Complaint in its entirety.

Dated: April 22, 2026

Respectfully submitted,

*/s/ Aaron S. Lukas*

Aaron S. Lukas
William Blake Coblentz
COZEN O'CONNOR
2001 M Street, NW, Suite 500

Washington, DC 20036
(202) 912-4800

Madison H. McNulty
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-5562

**COMBINED CERTIFICATIONS**

Pursuant to Rule 32(g), L.A.R. 25.1(b), L.A.R. 28.3(d), and L.A.R. 31.1(c), I certify that:

1. I am a member in good standing of the bar of this Court;

2. The brief (i) complies with the type-volume limitation of Rule 32(a)(7) because it contains 9,961 words, excluding the parts of the brief excluded by Rule 32(f); (ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word for Microsoft 365 MSO and is set in Times New Roman in a size equivalent to 14 points;

3. On this 22nd day of April, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the Court's CM/ECF system, and counsel for all parties will be served by the CM/ECF system;

4. The text of the electronic brief filed using the Court's CM/ECF system is identical to the text in any paper copies filed with Clerk; and

5. The electronic copy of this brief was scanned for viruses using Vipre Virus Protection, version 3.1, and no viruses were detected.

Dated: April 22, 2026 *<u>/s/ Aaron S. Lukas</u>*